**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

SHIVA STEIN,                                    :
                                                :
              Plaintiff,                        :       Civil Action No. 1:21-cv-4806
                                                :
v.                                              :       **COMPLAINT FOR VIOLATIONS OF**
                                                :       **SECTIONS 14(a) AND 20(a) OF THE**
WEINGARTEN REALTY INVESTORS,                    :       **SECURITIES EXCHANGE ACT OF**
ANDREW M. ALEXANDER, STANFORD J.                :       **1934**
ALEXANDER, SHELAGHMICHAEL C.                    :
BROWN, STEPHEN A. LASHER, THOMAS                :       **JURY TRIAL DEMANDED**
L. RYAN, DOUGLAS W. SCHNITZER, C.               :
PARK SHAPER, and MARC J. SHAPIRO,               :
                                                :
              Defendants.                       :
---------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.     This is an action brought by Plaintiff against Weingarten Realty Investors

("Weingarten or the "Company") and the members Weingarten's board of trust managers (the

"Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for

their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. §

244.100, in connection with the proposed merger between Weingarten and Kimco Realty

Corporation and its affiliates ("Kimco").

2.     Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on May 28, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Weingarten will merge with and into Kimco with Kimco surviving the merger (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Weingarten stockholder will receive 1.408 newly issued shares of Kimco common stock plus $2.89 in cash for each Weingarten common share owned (the "Merger Consideration").

3.     As discussed below, Defendants have asked Weingarten's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion.

4.     It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Weingarten's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because defendants conducts substantial business in this District; the closing of the Proposed Transaction will take place in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of Weingarten stocks and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Andrew M. Alexander has served as a member of the Board since 2019 and is the Chairman of the Board and President and Chief Executive Officer of the Company.

11.     Individual Defendant Stanford J. Alexander has served as a member of the Board since 1956.

12.     Individual Defendant Shelaghmichael C. Brown has served as a member of the Board since 2012.

13.     Individual Defendant Stephen A. Lasher has served as a member of the Board since 1980.

14.     Individual Defendant Thomas L. Ryan has served as a member of the Board since 2012.

15.     Individual Defendant Douglas W. Schnitzer has served as a member of the Board since 1984.

16.     Individual Defendant C. Park Shaper has served as a member of the Board since 2007.

17.     Individual Defendant Marc J. Shapiro has served as a member of the Board since 1985.

18.     Defendant Weingarten a Texas real estate investment trust and maintains its principal offices at 2600 Citadel Plaza Drive, Suite 125, Houston, Texas 77008.  The Company's stock trades on the New York Stock Exchange under the symbol "WRI."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

21.     Weingarten is a shopping center owner, manager and developer. At September 30, 2020, the Company owned or operated under long-term leases, either directly or through its interest in real estate joint ventures or partnerships, a total of 162 properties which are located in 15 states spanning the country from coast to coast. These properties represent approximately 31.0 million square feet of which our interests in these properties aggregated approximately 21.0 million square feet of leasable area.

22.     On April 15, 2021, the Company and Kimco jointly announced the Proposed

Transaction:

> JERICHO, N.Y. & HOUSTON--(<u>BUSINESS WIRE</u>)--Kimco
> Realty Corp. (NYSE: KIM), one of North America's largest
> publicly traded owners and operators of open-air, grocery-anchored
> shopping centers and mixed-use assets, and Weingarten Realty
> Investors (NYSE: WRI), a grocery-anchored Sun Belt shopping
> center owner, manager and developer, today announced that they
> have entered into a definitive merger agreement under which
> Weingarten will merge with and into Kimco, with Kimco continuing
> as the surviving public company. The transaction brings together
> two industry-leading retail real estate platforms with highly
> complementary portfolios, creating the preeminent open-air
> shopping center and mixed-use real estate owner in the country. The
> increased scale in targeted growth markets, coupled with a broader
> pipeline of redevelopment opportunities, positions the company to
> create significant value for its shareholders. The combined company
> is expected to have a pro forma equity market capitalization of
> approximately $12.0 billion and a pro forma total enterprise value
> of approximately $20.5 billion.
>
> Under the terms of the merger agreement, each Weingarten common
> share will be converted into 1.408 newly issued shares of Kimco
> common stock plus $2.89 in cash. Based on the closing stock price
> for Kimco on April 14, 2021, this represents a total consideration of
> approximately $30.32 per Weingarten share. On a pro forma basis,
> following the closing of the transaction, Kimco shareholders are
> expected to own approximately 71% of the combined company's
> equity, and Weingarten shareholders are expected to own
> approximately 29%. The parties currently expect the transaction to
> close during the second half of 2021, subject to customary closing
> conditions, including the approval of both Kimco and Weingarten
> shareholders. This strategic transaction was unanimously approved
> by the Board of Directors of Kimco and the Board of Trust
> Managers of Weingarten.
>
> The merger will create a national operating portfolio of 559 open-
> air grocery-anchored shopping centers and mixed-use assets
> comprising approximately 100 million square feet of gross leasable
> area. These properties are primarily concentrated in the top major
> metropolitan markets in the United States. The combined company
> is expected to benefit from increased scale and density in key Sun
> Belt markets, enhanced asset quality, tenant diversity, a larger
> redevelopment pipeline and a deleveraged balance sheet. As a result,

the combined company should be uniquely positioned to drive further sustained growth in net operating income (NOI) and asset value creation through continued strategic leasing and asset management.

"This business combination is highly strategic, creating a stronger platform that is even more capable of delivering long-term growth and value creation," said Conor Flynn, Kimco's Chief Executive Officer. "Not only will the merged company and its shareholders enjoy a larger, higher quality, more diversified portfolio with significant embedded growth opportunities, the transaction also reduces the combined company's leverage, creating a stronger financial profile. This combination reflects our conviction in the grocery-anchored shopping center category, which has performed well throughout the pandemic and provides last mile locations that are more valuable than ever due to their hybrid role as both shopping destinations and omnichannel fulfillment epicenters. It also gives us even greater density in the Sun Belt markets we are targeting as well as visibility into the trends shaping necessity-based retail."

Andrew "Drew" Alexander, Chairman, President and Chief Executive Officer of Weingarten, stated, "Combining these highly complementary platforms is a win-win for shareholders of both companies. After examining the deal from every angle, it became increasingly clear that the potential of the integrated business is much greater than the sum of its parts. The combined company's increased size and scale, together with its financial strength, should drive an advantageous cost of capital, allowing the combined company to more readily pursue value creation opportunities. We are excited to deliver this transaction to our shareholders, who will realize compelling and immediate value while also benefiting from the upside potential associated with owning the industry's preeminent open-air shopping center and mixed-use REIT."

**Summary of Strategic Benefits**

The merger of Kimco and Weingarten is expected to create a number of operational and financial benefits, including:

- **Enhanced Asset Diversification and Quality:** Adding Weingarten's collection of 159 high-quality, open-air grocery-anchored shopping centers and mixed-use properties advances Kimco's strategy of providing tenants and shoppers with greater last-mile fulfillment opportunities.

- **Expanded Geographic Reach in High-Growth, First-Ring Suburbs of Core Markets:** The transaction will grow Kimco's presence in strategic Sun Belt markets such as Houston, Miami, Phoenix, Atlanta and Orlando, boasting positive demographic and migration trends along with strong growth prospects. The Sun Belt and high-barrier-to-entry top coastal markets will represent more than 82% of the combined company's total annualized base rent (ABR).

- **Greater Tenant Diversity:** The combined company's top ten tenants are essential, industry-leading grocers such as Kroger, Whole Foods and Walmart and best-in-class retailers such as TJX, Ross Stores and Burlington. These brands will represent approximately 19.3% of total ABR, with no single tenant representing more than approximately 4%.

- **Compelling Value Creation Pipeline:** The combination of Weingarten's largely funded and de-risked development pipeline, together with Kimco's significant redevelopment projects and entitlements embedded in its existing portfolio, present compelling future growth opportunities. Most of these projects are located in markets where Kimco has an existing presence.

- **Substantial Operational Savings and Corporate Synergies:** The combined company is expected to realize annualized cost synergies of $35 to $38 million on a GAAP basis (excluding accounting adjustments) and $31 to $34 million on a cash basis. These expected savings are attributable to both companies' complementary business operations and significant regional overlap in high-growth Sun Belt markets where economies of scale can be realized. These synergies are expected to be substantially realized in the first full fiscal year post completion of the transaction.

- **Earnings Accretion and NOI Growth Opportunities:** Upon closing, the transaction is expected to be immediately accretive to earnings metrics. The combined company is also well positioned to increase cash flow at the property level by marking rents to market rates, realizing contractual rent increases, re-merchandising, growing portfolio occupancy and pursuing new value creation opportunities.

- **Increased Financial Strength and Flexibility:** The business combination will further strengthen Kimco's balance sheet by reducing net debt plus preferred to EBITDA. As a larger, lower leveraged company, Kimco is expected to have more cost-effective access to capital and benefit from earnings enhancement as existing debt matures in the coming years. This improved credit profile and greater liquidity put Kimco on a path toward potential future credit ratings upgrades.

**Leadership and Organization**

The combined company is committed to retaining a strong, highly qualified and diverse Board that has the requisite skills, knowledge and experience to oversee the company and its long-term strategic growth and performance. The number of directors on Kimco's Board of Directors will be expanded to nine, with one member of the existing Board of Trust Managers of Weingarten to be appointed to the Kimco Board. Milton Cooper will continue to serve as Executive Chairman of the Board of Directors of the combined company. Mary Hogan Preusse will continue to serve as Lead Independent Director for the combined company.

The Kimco management team will lead the combined company, with Conor Flynn as Chief Executive Officer, Ross Cooper as President and Chief Investment Officer, David Jamieson as Chief Operating Officer and Glenn G. Cohen as Chief Financial Officer. The approach to integration planning will draw from the best practices of both companies to ensure continuity for tenants, employees and other stakeholders.

Upon completion of the merger, the company's headquarters will remain in Jericho, N.Y. The company will retain the Kimco name and will continue to trade under the ticker symbol KIM (NYSE).

**Dividend Policy**

Kimco intends to maintain its current dividend level post-closing.

**First Quarter Update**

During the first quarter of 2021, Kimco executed 358 leases totaling 2.8 million square feet which includes 121 new leases for 586,000 square feet. Pro-rata rental rate spreads on comparable leases increased 6.8%, with rental rates for new leases up 8.2% and renewals and options growing by a combined 6.4%. Kimco ended the quarter with a pro-rata occupancy of 93.5% with anchor and small shop occupancy at 96.2% and 85.8%, respectively. For the first quarter of 2021, Kimco collected 94% of its total pro-rata billed base rents.

**Advisors**

Barclays and Lazard are acting as financial advisors, and Wachtell, Lipton, Rosen & Katz is acting as legal advisor to Kimco. J.P.

> Morgan is acting as exclusive financial advisor, and Dentons is
> acting as legal advisor to Weingarten.

* * *

23.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Weingarten's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Registration Statement**

24.     On May 28, 2021, Weingarten and Kimco jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial

forecasts (the "Company Projections" and "Kimco Projections") and provided them to the Board and the Financial Advisors by management of both Weingarten and Kimco with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2025: Cash NOI, FFO as Adjusted per share; and Unlevered Cash Flow as prepared by Company's management, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.     For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2025: Cash NOI, FFO as Adjusted per share; Unlevered Cash Flow; and Unlevered Free Cash Flow (excluding Alberstons dividends) as prepared by Kimco's management, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

30.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31.     With respect to J.P. Morgan's *Public Trading Multiples* Analysis, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by J.P. Morgan in the analysis.

32.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the range of terminal values for Weingarten and Kimco as of December 31, 2025; (ii) line items used to calculate the Company's projected unlevered free cash flows for fiscal years 2021 through 2025; (iii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 2.50% to 3.00%; (iv) the inputs and assumptions underlying the discount rates ranging from 7.00% to 7.50% for Weingarten and 6.75% to 7.25% for Kimco; and (v) the net debt of Weingarten and Kimco as of December 31, 2020.

33.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.   The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.   Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately

involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

39.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of Weingarten within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Weingarten, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Weingarten, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Weingarten, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

44.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 28, 2021                    **MELWANI & CHAN LLP**

By:  */s/ Gloria Kui Melwani*
      Gloria Kui Melwani (GM5661)
      1180 Avenue of the Americas, 8th Fl.
      New York, NY 10036
      Telephone: (212) 382-4620
      Email: gloria@melwanichan.com

      *Attorneys for Plaintiff*